IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE M. DERR and SHELBY A. DERR on their own behalf and on behalf of minors J.M.H., JR. and G.M.H., | No. 4:22-CV-01917 |
| | (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| JOSEPH HOUSER, SR.; JEN WILKINS, in both her individual and official capacities; AMANDA KURTZ, in both her individual and official capacities; and KIERA RUIZ-RUIZ, in both her individual and official capacities, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 11, 2023

I.    INTRODUCTION AND BACKGROUND

This matter arises from a civil action brought by pro se Plaintiffs Shelby and Grace Derr against Defendant Joseph Houser, the father of minors J.H.M., Jr. and G.M.H., as well as several employees of the Children and Youth Services agency of Northumberland County, Pennsylvania ("CYS"). Plaintiffs First Amended Complaint ("FAC") alleges claims under 42 U.S.C. § 1983 premised on Defendants' alleged violations of Plaintiffs' Fourteenth Amendment substantive due process rights and Fourth Amendment right to be protected from unreasonable searches and

seizures.[1] Plaintiffs also bring a civil claim under the Wiretap Act, 18 U.S.C. §§ 2510 to 2523,[2] and move for a preliminary injunction.[3] Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Magistrate Judge William I. Arbuckle recommended that this Court dismiss all of Plaintiffs' claims alleged in the FAC save their Fourth Amendment claim.[4] Defendants object to Magistrate Judge Arbuckle's recommendation that Plaintiffs adequately state a Fourth Amendment claim.[5]

Plaintiff Shelby Derr and Defendant Houser are the separated parents of minor children J.M.H. Jr. and G.M.H.[6] In October and November 2022, Houser reported his suspicions to CYS that Shelby was abusing controlled substances and threatening the children.[7] Houser provided CYS evidence of his communication with Shelby to substantiate his suspicions.[8] In response, CYS investigated Houser's claims and required Shelby to take a drug test, which came back positive for narcotics.[9] CYS then required Shelby to undergo inpatient rehabilitation, during which Plaintiff Grace Derr, Shelby's mother, supervised the children.[10] After Shelby completed

---

1   *See* First Amended Complaint ("FAC"), Doc. 11.
2   *See id.*
3   Mot. for Preliminary Injunction, Doc. 10.
4   Report and Recommendation, Doc. 14 at 31.
5   Doc. 16.
6   *Id.* at 4.
7   *Id.*
8   *Id.*
9   *Id.*
10  *Id.* at 4-5.

treatment, she, the children, and Grace resided together in Mount Carmel, Pennsylvania with Matthew Derr and his paramour, Mary Baker.[11]

Later in November 2022, Houser again reported to CYS that he suspected Shelby was mistreating the children and CYS again investigated.[12] Defendants Jen Wilson[13] and Kiera Ruiz-Ruiz proceeded to the Mount Carmel residence to investigate Houser's accusations.[14] Matthew Derr and Baker attempted to deny Wilson and Ruiz-Ruiz entry to the Mount Carmel residence, demanding they produce a warrant.[15] At the time, it appears that Shelby was not in the Mount Carmel residence and the children were under Baker's supervision.[16]

Wilson and Ruiz-Ruiz entered the Mount Carmel residence over Matthew Derr and Baker's objections, claiming that they "could enter any home where there are children, and had a 'standing warrant.'"[17] No warrant was ever produced.[18] Although the exact sequence of events is unclear, it appears that Wilson and Ruiz-Ruiz informed Shelby either by phone or in person that Houser reported his suspicion that G.M.H. "split a bag" of fentanyl while under Shelby's care.[19] They

---

[11] *Id.* at 5. The FAC does not explain Matthew Derr's relation to Plaintiffs.
[12] *Id.*
[13] Defendant Wilson was incorrectly identified in the caption of this matter as Jen Wilkins.
[14] *Id.*
[15] *Id.*
[16] FAC, Doc. 11 at 2.
[17] Report and Recommendation, Doc. 14 at 5.
[18] *Id.*
[19] *Id.*

3

also informed Shelby that Houser alleged that Shelby had sent him a message on Facebook Messenger indicating that she "hated J.M.H. [J]r. and wished him dead."[20]

Based on the above, Magistrate Judge Arbuckle found that Plaintiffs adequately stated a Fourth Amendment claim under § 1915(e)(2)(B)(ii).[21] Wilson and Ruiz-Ruiz raise timely objections to Magistrate Judge Arbuckle's recommendation, arguing that Plaintiffs' Fourth Amendment claim is legally insufficient.[22]

For the following reasons, the Court agrees with Wilson and Ruiz-Ruiz and rejects Magistrate Judge Arbuckle's recommendation as to Plaintiffs' Fourth Amendment claim. The Court otherwise adopts all of Magistrate Judge Arbuckle's recommendations.

## II. DISCUSSION

Under 28 U.S.C. § 636(b) provides that parties may raise objections to all or a portion of a magistrate judge's recommendations to the district court. Upon receipt of any objections, the district court reviews those portions *de novo*, and may "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[23] Defendants have timely objected to Magistrate Judge Arbuckle's recommendation that Plaintiffs adequately stated a Fourth Amendment

---

[20] *Id.* (quoting FAC, Doc. 11 at 2).
[21] *Id.* at 23.
[22] Objection Br., Doc. 17.
[23] 28 U.S.C. § 636(b).

claim. The Court therefore reviews that potion of his analysis *de novo*. Where no objection is made to a report and recommendation—as is the case with Plaintiffs' other claims—this Court will review the recommendation only for clear error.[24] Regardless of whether timely objections are made, district courts may accept, reject, or modify—in whole or in part—the findings or recommendations made by the magistrate judge.[25]

### A.     Plaintiffs' Fourth Amendment Claim

Wilson and Ruiz-Ruiz challenge Plaintiffs' Fourth Amendment claim on several grounds. They argue that: (1) they are absolutely immune to civil liability as child and youth services employees, (2) they are immune under section 6318 of the Child Protective Service Law ("CPSL"), 23 Pa. C.S. § 6301 *et seq.*, and (3) their warrantless intrusion was justified under the exigent-circumstances exception to the warrant requirement.[26]

Wilson and Ruiz-Ruiz's first two arguments are wholly without merit. As to their first, they correctly point out that the United States Court of Appeals for the Third Circuit extended prosecutorial absolute immunity to CYS employees, but only when they perform functions "in dependency proceedings [that] are closely

---

[24] Fed. R. Civ. P. 72(b), advisory committee notes; *see Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that court should in some manner review recommendations regardless of whether objections were filed).
[25] 28 U.S.C. § 636(b)(1); M.D. Pa. Local R. 72.31.
[26] Objection Br., Doc. 17

analogous to the functions performed by prosecutors in criminal proceedings."[27] That would include deciding whether to "bring such proceedings" and "advocat[ing]" on the state's behalf during such proceedings.[28] Here, Wilson and Ruiz-Ruiz were investigating accusations of child abuse, not deciding whether to pursue criminal charges against Plaintiffs. That is not a prosecutorial function—it is a law enforcement function. Accordingly, they do not have absolute immunity to Plaintiffs' Fourth Amendment claims.

Wilson and Ruiz-Ruiz's second argument fares no better. They claim immunity under 23 Pa. C.S. § 6318—a state law. That cannot provide them immunity from Plaintiffs' federal Fourth Amendment claim.

Wilson and Ruiz-Ruiz lastly argue that they did not violate Plaintiffs' Fourth Amendment rights because their warrantless entry was justified by exigent circumstances. Warrantless searches are "presumptively unreasonable" under the Fourth Amendment, but the exigent-circumstances doctrine is a "well-recognized" exception to the warrant requirement that applies "when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment."[29]

---

[27] *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997).
[28] *Id.* (first quoting *Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987), then quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 & n.33 (1976))
[29] *Kentucky v. King*, 563 U.S. 452, 460 (2011).

6

Courts consider six factors—known as the *Dorman* factors—when determining whether the exigent-circumstances exception applies: (1) "the gravity of the crime that has been committed"; (2) "a reasonable belief that the suspect is armed"; (3) "a clear showing of probable cause based upon reasonably trustworthy information"; (4) "a strong belief that the suspect is in the premises"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) "peaceable entry, affording the suspect 'an opportunity to surrender . . . without a struggle and thus to avoid the invasion of privacy involved in entry into the home.'"[30]

As to the first *Dorman* factor, the FAC alleges that Houser claimed that G.M.H. had consumed narcotics while under Shelby's supervision and that Shelby had expressed a desire that J.M.H. Jr. die. Exposing children to narcotics is sufficient to prosecute an individual under 18 Pa. C.S. § 4304, which criminalizes child endangerment.[31] Exposing a child to a deadly narcotic such as fentanyl would likely upgrade a child endangerment charge to a felony of the third degree, or of the second degree if "part of a course of conduct."[32] The Court therefore concludes that Shelby

---

[30] *United States v. Anderson*, 644 F. App'x 192, 195 (3d Cir. 2016) (quoting *Dorman v. United States*, 435 F.2d 385, 392-93 (D.C. Cir. 1970) (en banc)) (alterations in original).

[31] *See Commonwealth v. Capriotti*, 262 A.3d 560 (Pa. Super. Ct. 2021), *appeal granted*, 273 A.3d 510 (Pa. 2022), *and appeal dismissed as improvidently granted*, 287 A.3d 810 (Pa. 2023) (rejecting the defendant's sufficiency-of-the-evidence challenge to his child endangerment conviction under section 4304 in part because the evidence showed that the defendant left drugs in a place accessible by the defendant's fourteen-year-old son).

[32] 18 Pa. C.S. § 4304(b)(1)(iii), (iv). One of the children did test positive for fentanyl. Report & Recommendation, Doc. 13 at 6.

was accused of committing a serious crime, and the first factor accordingly weighs in favor of exigent circumstances.

The Court finds the second *Dorman* factor to weigh against exigent circumstances, as there is no indication that Shelby was armed or had any history of violence. That observation is somewhat tempered by Shelby's history of drug abuse and Houser's suspicion that one of the children had consumed fentanyl. Although narcotics would not traditionally be recognized as a weapon, the potential presence of fentanyl in the Mount Carmel residence presented an immediate risk to the children's physical safety.

The third *Dorman* factor turns on Houser's reliability, as his allegations appear to be the chief basis for Defendants' entry into the Mount Carmel residence. Houser had accurately reported and provided evidence of Shelby's drug abuse, which led to a positive drug test and her inpatient rehabilitation at CYS' insistence in October 2022. The Court therefore considers him to be a reliable informant. His allegations therefore provided Wilson and Ruiz-Ruiz with probable cause to investigate Plaintiffs' supervision of J.M.H., Jr. and G.M.H.. The third *Dorman* factor accordingly weighs in favor of exigent circumstances.

The fourth *Dorman* factor also weighs in favor of exigent circumstances. Wilson apparently spoke to Shelby on the phone while Shelby was in Kulpmont, Pennsylvania. It is unclear if Shelby made Wilson aware that she was not in the

Mount Carmel residence.[33] It appears from the FAC that Plaintiffs arrived at the Mount Carmel residence at some point either before or after Wilson and Ruiz-Ruiz entered it.[34] In any event, as the FAC alleges that the Mount Carmel residence was the family's "primary residence," the Court concludes that Wilson and Ruiz-Ruiz had a reasonably strong basis to believe that Shelby was there.

As for the fifth *Dorman* factor, there is no basis from which the Court can infer that Plaintiffs would flee from Wilson and Ruiz-Ruiz. Accordingly, that factor weighs against exigent circumstances. As to the sixth factor, the Court cannot determine from the FAC whether Wilson and Ruiz-Ruiz forcibly entered the Mount Carmel residence. The FAC does allege that Matthew Derr and Baker objected to their entry, but nothing demonstrates that Wilson and Ruiz-Ruiz used force to enter the home. Therefore, the sixth factor is neutral.

The *Dorman* factors in favor of exigent circumstances outweigh the factors against. The Court therefore finds Wilson and Ruiz-Ruiz's entry was justified under the exigent-circumstances exception and accordingly rejects Magistrate Judge Arbuckle's recommendation as to Plaintiffs' Fourth Amendment claim. Based on the Court's independent review of the FAC, Plaintiffs fail to state a Fourth Amendment claim.

---

[33] It is unclear from the FAC where Shelby lived. She refers to the Mount Carmel residence as her "primary residence" but also states that she "was at her home in Kulpmont." FAC, Doc. 11 at 2.

[34] *See* FAC, Doc. 11 at 3 ("Miss Derr arrived at the [Mount Carmel residence] at approximately 6:25 to 6:30 p.m. [and] Mrs. Derr arrived at the home at approximately 6:45 to 6:50 p.m.").

**B.     Plaintiffs' Other Claims**

As no party filed an objection to any of Magistrate Judge Arbuckle's other recommendations, the Court reviews them for clear error. Upon review of the record, the Court finds no error, clear or otherwise, in Magistrate Judge Arbuckle's analysis of Plaintiffs' other claims.

**III.   CONCLUSION**

For the foregoing reasons, the Court rejects Magistrate Judge Arbuckle's recommendation as to Plaintiffs' Fourth Amendment claim and adopts his recommendations as to Plaintiffs' other claims. Accordingly, the Court will dismiss the FAC in its entirety.

An appropriate Order follows.

                                                BY THE COURT:

                                                *s/ Matthew W. Brann*
                                                Matthew W. Brann
                                                Chief United States District Judge